Harold V. Bell, Jr. and Virginia M. Bell v. Commissioner.
Bell v. Commissioner
Docket No. 63122.
United States Tax Court
T.C. Memo 1958-33; 1958 Tax Ct. Memo LEXIS 193; 17 T.C.M. (CCH) 137; T.C.M. (RIA) 58033; February 28, 1958
Richard deY. Manning, Esq., for the petitioner. A. Jesse Duke, Jr., Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined a deficiency in income tax of $529.72 for the year 1953. The issues for decision are (1) whether petitioners may properly deduct the expenses of a trip to Europe in 1953 as business expenses under section 23(a)(1)(A) of the Internal Revenue Code of 1939 and the amount thereof, and (2) whether the expenses incurred in exporting an automobile to Europe were incurred in connection with a transaction entered into for profit so as to be deductible under section 23(a)(2) of the Internal Revenue Code of 1939. Petitioner claims an overpayment of *194 $1,060.54. Findings of Fact Some of the facts are stipulated, are so found and the stipulation is included herein by reference. Petitioners are individuals residing in Bronxville, New York. Their return for 1953 was filed with the District Director of Internal Revenue, Upper Manhattan, New York. Since about 1947 petitioner Harold V. Bell, a psychologist (hereafter called "petitioner") has been interested in market research psychology. In 1947 petitioner read a paper at the American Psychological Association convention and shortly thereafter "handled an assignment" with the Survey Research Center at the University of Michigan. In 1949, he did a "psychological market research study" for Doubleday and Company. In 1949 through 1950 petitioner accepted and was employed by Young and Rubicam in a "permanent position." This employment was terminated in 1950 for a "permanent status" with the National Broadcasting Company which offered him a "better job." In the summer of 1951, petitioner went to Houston, Texas, to accept a position with Wilkinson, Schiwetz and Tips (hereafter called Tips.) His work there consisted of forming a research department for Tips and handling consumer research *195 problems of Anderson-Clayton Company, a client of Tips. Petitioner was a salaried employee of Tips and was carried on Tips' regular payroll at a stipulated monthly amount. When petitioner left New York for Houston he did not maintain an office or apartment in New York during his absence. In 1953, petitioner handled off and on prior to March, a 3 or 4-week assignment of "psychological interviewing" independent of his employment with Tips. In late 1952 or early 1953, petitioner decided to go to Europe. During this trip he hoped to meet market researchers and expand his background in marketing consultation. He intended to form an independent market research firm on his return and to capitalize upon the contacts he had made in Europe and his additional experience in the event he should obtain any clients thereafter. During the time he was in Europe he had no clients and was not doing any work for others. In 1953, petitioner terminated the work he was doing for Anderson-Clayton on behalf of Tips and returned to New York. This was about 2 or 3 weeks before he left for Europe. During the 2 or 3-week period he did not open an office in New York or obtain a business telephone listing, though *196 he did attempt without success to interest several firms in retaining his services. Petitioner departed for Europe about March 25, 1953, and returned about October 1953. While in Europe and North Africa he traveled in various countries and had an itinerary of between 20,000 and 25,000 miles. His wife did not accompany him. On his trip he attempted to and did develop research contacts who could be utilized in any business he might develop after his return to the United States. In 1951, petitioner purchased a 1951 Mercury automobile for personal use. He took this automobile with him to Europe at a cost of $748.12 for transportation, customs papers, etc., $124 of which was subsequently refunded to him on November 13, 1953. During his stay abroad the automobile was used for traveling from place to place and was brought back to the United States. His primary purpose in taking the automobile to Europe was to use it for transportation while there, but he did have the idea that he might sell it abroad at a profit and thus aid in financing his trip. On June 12, 1953, petitioner contracted to sell the car for $2,100 and received a deposit of $500 from Earnest R. McKee on the purchase. *197 Sale of the automobile was not completed and petitioner refunded $375 after his return to the United States. On petitioner's original income tax return for the calendar year 1953 he claimed the following deduction from adjusted gross income under itemized "Miscellaneous Deductions": Miscellaneous *
Transportation self & Auto
to Europe $1,323.12 / 2
$ 661.56
Mercury Auto Exp. 24,728
miles X 7" / 2
865.48
Living Exp. 3/1/53 to
10/18/53 at $10.00 day / 2
1,110.00
Total Miscellaneous
Deductions
$2,637.04
*198 Footnotes
*. This is 50% of expenses incurred in 7-Mo., 25,000 mile survey of marketing methods and business conditions in 26-odd countries of Europe, No. Africa and No. America * * * On petitioner's amended income tax return for the calendar year 1953 he claimed a loss in Schedule C, Summary - Profit (Or Loss) From Business Or Profession, Farming and Partnership, to which the following profit and loss statement was appended: Receipts
1. Fees for Survey work
$ 600.00
2. Gain on goods exported abroad
125.00
Total Receipts
$ 725.00
Business Deductions
1. Total cost of Market Survey of
Europe & North America
5,276.08
(a) Transportation abroad - Self &
Automobile $1,323.12
(b) Gasoline, etc. for 24,728
miles at 7" mile 1,730.96
(c) Living expenses 3/1/53
to 10/8/53 at 10.00/day 2,222.00
2. Losses on exported goods
1,225.00
3. Office rent Jan.-Feb.-Nov. & Dec.,
1953
140.00
4. Dues to professional societies
22.50
Total Deductions
$6,663.58
Loss (deductions less receipts)
$5,938.58
During his trip to Europe petitioner also investigated possible business opportunities in the "export-import line." He also investigated the possibilities of negotiating the sale of a foundry to a steel company, as well as gathered "voluminous notes" to write a book on European culture. Opinion The Commissioner contends that petitioner was not engaged in any trade or business at the time the expenses claimed as deductions were incurred, consequently, that the expenses are non-deductible. We agree. Our conclusion is based on an examination of the facts of record. In our view, they establish that prior to the time petitioner departed the United States for Europe in March of 1953, he was an employee of Tips in Houston, Texas. True, he was engaged off and on over a 3 or 4-week period in handling an assignment of "psychological interviewing" on the side, but we do not think this was sufficient to be considered as putting him in the trade or business of an independent consultant in market research. So far as we can see, the work he was doing for Anderson-Clayton was being done as an employee of Tips. Anderson-Clayton was not his client but the client of Tips. It contributes nothing to establishing that petitioner was carrying on the business of an independent consultant in the crucial year. Prior to his return to the United States he had no office of his own and no clients of his own. Obviously the expenses incurred were not incurred in connection with his employment by Tips or others. Our interpretation of the evidence is that during the part of 1953 when the expenses in question were incurred, petitioner had no trade or business. His purpose in making the trip abroad was to make contacts and interview persons who might aid him in any future business he might develop after he set himself up as an independent consultant. As said in Morton Frank, 20 T.C. 511, 513, "The trips made by the taxpayers * * * were not related to the conduct of the business that they were engaged in but were preparatory to locating a business venture of their own. The expenses of investigating and looking for a new business and trips preparatory to entering a business are not deductible as an ordinary and necessary business expense incurred in carrying on a trade or business." As the Commissioner argues on brief, "Whether the expenditures made * * * can be considered organizational expenses of the proposed consulting service, Mid-State Products Co.(1954) 21 T.C. 696, or whether they be viewed as the purchase price or cost of an asset, Henry G. Owen, 23 T.C. 377, they are clearly not deductible as ordinary and necessary business expenses of carrying on a trade or business." We hold that the expenses incurred on the European trip in 1953 are not properly deductible. The amount thereof, which is also in issue, thus becomes of no moment. As the second question for decision, petitioner contends that he is entitled to deduct the costs of transporting his automobile to Europe since such expenses were "incurred in connection with a transaction entered into for profit." Here, again, we hold for the Commissioner in disallowing the claimed deduction. The automobile was concededly purchased for personal use. It was so used during the entire period of its ownership by petitioner. Though he entered into a contract of sale for the vehicle while in Europe, the contract was never carried out and he continued to use the car for his personal transportation for some 20,000 to 25,000 miles during his European travels. He returned it to the United States after his trip. Whatever profit motive petitioner may have had in taking his car to Europe is entirely submerged by the personal use which he in fact made of the automobile. See Allan Cunningham, 22 T.C. 906. Other adjustments made by the Commissioner are not contested. Decision will be entered for the respondent. ↩